UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 0:18-cr-171-DSD-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Henry James Soll, III | |
| Defendant. | |

Defendant Henry James Soll, III has filed a motion to suppress evidence found on his person during a warrantless arrest and discovered in his vehicle during the execution of a search warrant. (ECF No. 22.) Because sufficient probable cause existed for the arrest and the search warrant, the Court recommends that Mr. Soll's motion be DENIED.

I.    Facts

On April 19, 2018, law enforcement responded to reports of a shooting behind Johnny Baby's Bar in St. Paul. (Tr. 10:6–12.) Some of the responding officers went to Regions Hospital, where they spoke with a gunshot wound victim who stated he had been at the bar during the incident. (*Id.*) He stated that he pulled into the parking lot behind Johnny Baby's and became caught in the crossfire between two vehicles whose occupants were shooting at each other. He described one vehicle as a silver or gray sedan. (Tr. 11:5–13.) Upon further questioning, the victim became uncooperative and requested a lawyer, ultimately providing no additional information regarding the incident. (Tr. 25:5–22.)

Meanwhile, a second team of officers inspected the scene at Johnny Baby's. They found shell casings in the parking lot and street and discovered a silver KIA abandoned in a snow bank just north of the parking lot. (Tr. 12:5–13:6.) In the car, the officers saw a gun sitting in plain view between the front seat and the console. (Tr. 13:7–12.)

The officers spoke with a woman on the scene, B.M., who told the officers that she and a man she knew only as "Scotta" or Scooby" were sitting in the silver KIA when a dark-colored SUV pulled up next to them and started shooting. (Tr. 13:15–

15:9.) B.M. asserted that they fled in the car before crashing into the snowbank and running behind some dumpsters in a nearby parking lot for shelter. (Tr. 15:1–9.) B.M. told officers that Scotta did not have a gun and had not participated in the shooting. (Tr. 19:4–6.) She also did not know Scotta's actual name but was able to provide the officers with a phone number and a birth date. (Tr. 18:3–9.) Officers traced this information back to Mr. Soll. (Tr. 18:10–17, 20:18–21:8.) When law enforcement searched their database for the nicknames "Scooby" and "Scotta," they found that both were used by Mr. Soll. (Tr. 21:9–14.) Officers traced the ownership of the car back to another woman, M.L., with whom Mr. Soll was associated during a previous incident. (Tr. 21:15–22:24.)

Officers also interviewed an eyewitness to the shooting, who was parked next to the silver KIA before the shooting took place. (Tr. 19:7–16.) She said that she saw the dark SUV pull into the parking lot and witnessed the two cars exchange gunfire. (Tr. 19:24–6.) The witness was unable to identify any individuals in the SUV, but told officers that the silver KIA had 4–5 black men inside it. (Tr. 37:4–15.)

On April 23, 2018, Saint Paul Police Officer Zebro, who had been assigned to the case the day after the shooting, issued a "pick up and hold" for Mr. Soll. This was a bulletin that went out to area law enforcement and included instructions to arrest and detain Mr. Soll. (Govt. Ex. 3, Tr. 24:14–25:3.) Mr. Soll was located and arrested on June 4, 2018 by Dakota County Deputy Sheriff Fahey. Officer Zebro did not participate in the arrest. Deputy Fahey is a member of the United States Marshals Fugitive Task Force, and his assistance in locating and arresting Mr. Soll was requested by a task force officer with the Saint Paul Police Department. (Tr. 36:5–37:8.) The officers positively identified Mr. Soll as he was opening a vehicle outside of an apartment. (Tr. 48:9:–16.) During a search incident to the arrest, officers located a gun and bags of drugs on Mr. Soll's person. (Tr. 48:22–50:15.) Officers then obtained a search warrant, supported by the discovery of a gun and drugs, for the car as well as the apartment associated with Mr. Soll's arrest. During the execution of this warrant, law enforcement discovered guns, ammunition, a bullet-proof vest, and drug paraphernalia. (Govt. Ex. 6.)

## II     Analysis

Mr. Soll challenges his warrantless arrest as well as the search warrant for the car and apartment. He argues that officers did not have probable cause to arrest him for the April 19, 2018 shooting at Johnny Baby's. Mr. Soll also asserts that the search warrant obtained after his arrest is invalid, because it relied on the unlawfully seized evidence from that arrest. After careful consideration, the Court concludes that

probable cause existed for Mr. Soll's arrest, and that the subsequent search warrant was valid.

### A.   The Warrantless Arrest

The Fourth Amendment permits warrantless arrests when the arresting officer has "probable cause to believe that criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).[1]  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck*, 543 U.S. at 152.  Probable cause exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011.)

Where multiple officers have been involved in a case, the arresting officer need not have personal knowledge of all the facts that support probable cause.  Instead, the collective knowledge of all investigating officers may be imputed to the arresting officer, provided there has been "some degree of communication." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011); *see also United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000).  "This requirement serves to distinguish between officers functioning as a search team and officers acting as independent actors who merely happen to be investigating the same subject." *Robinson*, 664 F.3d at 704 (quotation omitted).  Mr. Soll argues that the pick up and hold issued by Officer Zebro, which led to his arrest, was based on speculation, conjecture, and the "bare conclusions of others."  The Court disagrees.  Against the factual backdrop present in this case, it is clear that probable cause existed to arrest Mr. Soll.

At the outset, there can be no doubt that there was more "some degree" of communication between the officers who investigated the shooting and the officers involved in Mr. Soll's arrest.  The pick up and hold bulletin itself contains substantial information, including details of the offense and the weapons believed to have been involved.  (Govt. Ex. 3.)  The Saint Paul police officer involved in Mr. Soll's arrest specifically requested the assistance of Deputy Fahey, thereby making him part of his "team" for the purposes of the collective knowledge doctrine. *E.g.*, *Robinson*, 664 F.3d

---

[1] Minnesota has codified circumstances in which warrantless arrests are permitted, including "when a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it."  Minn. Stat. § 629.34(1)(c)(3).  In this context, "reasonable cause" and "probable cause" are synonymous. *State v. Merrill*, 274 N.W.2d 99, 108 (Minn. 1978).

at 704 (finding that an officer whose assistance for a specific traffic stop was requested by another officer became part of the "team" and acquired the collective knowledge of the team). Additionally, Deputy Fahey testified that prior to the arrest he reviewed the pick up and hold and Mr. Soll's photo and description, which were provided to him by the Saint Paul Police Department. (Tr. 46:3–17.)

Not only was there adequate communication between the officers involved, but ample facts known prior to Mr. Soll's arrest supported probable cause. First, law enforcement had reason to believe that somebody in the silver KIA located near Johnny Baby's had possessed and fired a gun. There is no question that a victim was shot, and there is significant evidence to suggest that somebody in the silver KIA fired the bullet. The victim told officers that he believed somebody in a gray or silver sedan shot him. (Tr. 11:6–13.) An eyewitness supported the victim's account of at least two cars shooting, including the silver KIA. (Tr. 19:24–20:6.) Shell casings from more than one gun were found at the scene. (Tr. 20:7–17.) And an assault rifle was discovered in plain view in the silver KIA after it had been abandoned. (Tr. 13:7–12.) The fact that aspects of two self-serving statements—one from the victim, and one from the woman with Mr. Soll—contradict certain parts of this evidence does not defeat probable cause. There is more than enough evidence from the totality of the circumstances for an officer to reasonably conclude that somebody in the silver KIA shot a gun that evening.

Second, having decided that someone from the abandoned KIA shot a gun, police also had probable cause to believe that the shooter was Mr. Soll. Most significantly, B.M placed Mr. Soll at the scene of the shooting. Although she knew him by his nicknames—Scotta or Scooby—information she provided the police led to Mr. Soll's identification, and Mr. Soll does not contest that identification. Surveillance video obtained after the pick up and hold was issued, but before Mr. Soll's arrest, showed a man with B.M. who matched Mr. Soll's description. (Tr. 17:2–22.) And the vehicle involved was registered to someone with a known connection to Mr. Soll.

Based on all of the evidence, it was reasonable for law enforcement to conclude that Mr. Soll had committed aggravated assault.[2] The totality of the circumstances

---

[2] Mr. Soll argues that the probable cause inquiry should be focused on the gun possession charge on which Mr. Soll was ultimately indicted, and not aggravated assault, but this argument does not carry the day. He cites no authority for this argument and the Court is aware of none. The probable cause inquiry should be based on the felony that law enforcement had reason to believe that Mr. Soll had committed, a felony which was intimately intertwined with gun possession. The arrest of Mr. Soll was based on his potential involvement in aggravated assault, not on a gun

provided probable cause to arrest Mr. Soll. *See, e.g.*, *United States v. Perry*, 908 F.3d 1126, 1129 (8th Cir. 2018) ("[I]t is a mistake to assess probable cause 'viewing each fact in isolation, rather than as a factor in the totality of the circumstances.'" quoting *District of Columbia v. Wesby*, -- U.S. --, 138 S.Ct. 577, 588 (2018)).

### B.    The Search Warrant

Because Mr. Soll's arrest was valid, there was no illegality in the issuance of the search warrant supported in part by the firearms and drugs found on Mr. Soll during the search incident to his arrest. The Fourth Amendment states that "no warrants shall issue, but upon probable cause." The standard for determining whether a search warrant had probable cause to issue is well-established:

> Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.

*United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (quotations and citations omitted.) A "common sense" approach should be used when determining whether probable cause has been established, considering all the evidence available. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *States v. Solomon*, 432 F.3d 824, 827 (8th Cir 2007).

Here, it is clear that there was probable cause to issue the search warrant. The affidavit submitted by St. Paul Police Officer Scott Sandell included information regarding a second shooting allegedly involving Mr. Soll and referenced Mr. Soll's past criminal history. The affidavit also included details regarding Mr. Soll's June arrest described above, when law enforcement discovered a gun and narcotics on his person. The arresting officers had watched Mr. Soll leave an apartment and access a vehicle just before the arrest, tying him to the contents of the car. Furthermore, the affidavit included independent information regarding Mr. Soll's relationship with the other occupant of the apartment. It is entirely reasonable to infer based on this

---

possession charge. The fact that Mr. Soll was ultimately charged with other offenses does not change this analysis.

information that either the apartment, the car, or both would have additional evidence of criminal activity.

### III.    Conclusion

Accordingly, the Court recommends that Mr. Soll's motion to suppress evidence (ECF No. 22) be DENIED.

Date:  December 13, 2018                             *s/Katherine Menendez*
                                                                         Katherine Menendez
                                                                         United States Magistrate Judge